UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **CHRISTOPHER O'CONNOR, KEVIN O'CONNOR, and JAMES ADAM COX,** on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>**OAKHURST DAIRY AND DAIRY FARMERS OF AMERICA, INC.,**<br><br>  Defendants. | Case No. 2:14-cv-00192-NT |

## DEFENDANTS' MEMORANDUM REGARDING THE LEGAL BASES FOR THEIR ANTICIPATED DISPOSITIVE MOTION(S) AND RELATED DISCOVERY ISSUES

Defendants submit the following memorandum setting forth the specific bases for their anticipated dispositive motion(s).

### I.  Introduction

The Plaintiffs bring this action on behalf of themselves and all others "similarly situated" against Defendants Oakhurst Dairy and Dairy Farmers of America, Inc. The Plaintiffs, who are all current or former delivery drivers of Defendant Oakhurst, allege they were denied overtime pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (the "FLSA"), and the Maine Minimum Wage and Overtime Law, 26 M.R.S.A. § 664. Plaintiffs seek to pursue their (1) FLSA claim as a collective action under 29 U.S.C. § 216(b) and (2) state law claim as a class action under Federal Rule of Civil Procedure 23. Defendants deny Plaintiffs, or any putative collective action plaintiffs or class members, are owed overtime pay.

In the interest of judicial economy, Defendants proposed an early dispositive motion deadline and emphasized the need for early, but limited, discovery on the issues to be addressed in these dispositive motions. Plaintiffs have suggested they need immediate discovery regarding

the putative collective action plaintiffs and class members, including their names and last known addresses. However, such discovery (1) has the potential to usurp the notice process that would potentially follow conditional collective or class action certification, and (2) may be needless if summary judgment in Defendants' favor is granted. Furthermore, Defendants' anticipated bases for their dispositive motions – *i.e.*, preemption of Maine state law and the FLSA exemption status of the named Plaintiffs – are legal in nature; require little, or no, fact discovery; and are expected to be dispositive regarding the named plaintiffs, and putative collective action plaintiffs' and class members', claims. Consequently, Plaintiffs should not be allowed to unlock the doors to broad-ranging class and collective discovery simply because their Complaint purports to make class and collective action allegations.

For these reasons, Defendants ask the Court to grant their request for an early dispositive motion deadline and to limit early discovery to those issues implicated by their anticipated motions.[1]

## II.   Defendants' Anticipated Motion(s) for Early Summary Judgment

Defendants anticipate relying on two legal bases when moving for early summary judgment. Defendants will argue Plaintiffs' state law claims are preempted by federal law. Defendants will also argue the named Plaintiffs (and by implication, other putative collective action plaintiffs and class members) are exempt from the FLSA's overtime requirements under the Motor Carrier Act (the "MCA") exemption, 29 U.S.C. § 213(b)(1), and/or the FLSA's outside sales exemption, 29 U.S.C. § 213(a)(1).

---

[1] Defendants understand, from the Parties' discussion with the Court regarding planning and scheduling, that they will not necessarily be limited to filing dispositive motions addressing the issues identified in this memorandum. As Defendants mentioned, though, they will promptly notify the Court, and Plaintiffs' counsel, if they identify any additional bases for early dispositive motions.

### A.   Plaintiffs' State Law Claims Are Preempted by Federal Law

There are two possible preemption arguments[2] regarding Maine's Minimum Wage and Overtime Law, 26 M.R.S.A. § 664. The first argument is that, as applied to Plaintiffs, the state law is preempted by the federal Motor Carrier Act, which grants the Secretary of Transportation the power to set Plaintiffs' maximum hours of service. 49 U.S.C. § 31502. At all times relevant to this action, the maximum hours of service set by the Secretary have been 60 hours in any period of 7 consecutive days, if the employer does not operate commercial motor vehicles every day of the week; or 70 hours in any period of 8 consecutive days if the employing motor carrier operates commercial motor vehicles every day of the week. *See* 49 C.F.R. § 395.3. Yet, if Maine's Minimum Wage and Overtime Law applied to the Plaintiffs, the Secretary's regulations would largely be undone and a new, implicit maximum hours requirement of 40 hours per week would apply to the Plaintiffs. It is Defendants' position that such a result is incongruent with Congress' intention in passing the Motor Carrier Act, which was to promote the primacy of federal regulation of motor carriers. 49 Stat. 543 at § 202(a).[3] Thus, Defendants believe Maine's Minimum Wage and Overtime law, as applied to Plaintiffs, is preempted through field and/or conflict preemption, by the Motor Carrier Act.

The second preemption argument is that the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501, <u>expressly</u> preempts the Maine Minimum Wage and Overtime Law as applied to Plaintiffs. 49 U.S.C. § 14501(c)(1). In the most recent U.S. Supreme Court decision addressing FAAAA preemption, *Rowe, et al. v. New*

---

[2] Although Defendants generically describe their expected bases for early summary judgment, they recognize the Court will not be ruling on any such motions unless, or until, filed at a later date.

[3] Defendants note they will be asking for a good faith extension of the law with respect to this preemption argument.

*Hampshire Motor Transport Ass'n,* 552 U.S. 364 (2008), the Court recognized that by passing the FAAAA, Congress sought to broadly preempt State trucking regulations by prohibiting a State from enacting or enforcing any law "related to a price, route, or service of any motor carrier … with respect to the transportation of property." 552 U.S. at 368 (quoting 49 U.S.C. § 14501(c)(1)). The FAAAA also reflects Congress' overarching goal of assuring that transportation rates, routes, and services reflect maximum reliance on competitive market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety and quality. *Rowe,* 552 U.S. at 371. In light of the Congressional goal of ensuring prices, routes, and services are driven by market forces, courts have noted the preemption provision should be given broad effect. *Martins v. 3PD, Inc*., No. 11–11313–DPW, 2013 WL 1320454, at *10 (D. Mass. Mar. 28, 2013). Consequently, several cases have found that state wage and hour laws are preempted by the FAAAA where application of the state law would force a motor carrier to increase its prices or change its routes, or where application of the law could affect driver productivity or efficiency. *See, e.g., DiFiore v. Am. Airlines*, 646 F.3d 81, 86-90 (1st Cir. 2011)[4]; *Ortega v. J.B. Hunt Transport, Inc*., No. CV 07–08336, 2014 WL 2884560, at * 3-6 (C.D. Cal. June 4, 2014). Defendants believe they will be able to show that application of Maine's Minimum Wage and Overtime Law will have a significant enough impact on Defendant Oakhurst's prices, routes, and/or services so as to warrant preemption by the FAAAA.

---

[4] *DiFiore* is an Airlines Deregulation Act preemption case. Because the ADA has nearly identical preemption language, courts have relied on ADA cases to interpret the FAAAA.

### B. Plaintiffs' FLSA Claims are Expected to Fail Because Plaintiffs Are Exempt Under the Motor Carrier Act Exemption and/or the Outside Sales Exemption

#### 1. The Motor Carrier Act Exemption

The FLSA's overtime provisions do not apply to employees over whom the Secretary of Transportation has the power to establish qualifications and maximum hours. 29 U.S.C. § 213(b)(1); 29 C.F.R. § 782.1(a). Under the MCA, the Secretary has the power to establish maximum hours and qualifications of service for employees who:

1. Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the [Secretary's jurisdiction under the MCA]; and
2. Engage in activities of a character directly affecting the safety of operation of motor vehicles in transportation on the public highways … of property in interstate or foreign commerce within the meaning of the [MCA].

*Baez v. Wells Fargo Armored Serv. Corp.*, 938 F. 2d 180, 181-82 (11th Cir. 1991) (*citing* 29 C.F.R. § 782.2(a)).

Although the named Plaintiffs' job duties may have differed from one another, Defendants believe they will be able to show the named Plaintiffs are, or were (1) employed by Defendants, who are carriers subject to the Secretary's jurisdiction, and (2) engaged in activities directly affecting the safe operation of motor vehicles in interstate commerce. Consequently, Plaintiffs' FLSA claims must be dismissed; and, because Plaintiffs' FLSA claims must be dismissed, they will not have standing to continue litigating this matter as a collective action.

#### 2. The Outside Sales Exemption

In addition to the MCA exemption, Defendants believe some of the Plaintiffs are, or were, exempt under the FLSA's Outside Sales exemption. Section 13(a)(1) of the FLSA provides an exemption from the statute's minimum wage and overtime requirements for "any employee

employed ... in the capacity of outside salesman." The Department's regulations define the phrase "outside salesman" as any employee:

1. Whose primary duty is making sales within the meaning of section 3(k) of the Act or obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

2. Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500. Defendants believe they will be able to show that the primary duty of at least some of the named Plaintiffs is making sales of certain Oakhurst products. Some customers order these products directly from the drivers and drivers are instrumental in communicating customers' orders. Drivers also, from time-to-time, market sample products to determine if there are markets for the products.

### III.   Conclusion

Given the defenses outlined above, Defendants believe judicial economy is best served through the early submission of dispositive motions and limiting early discovery to facts related to the preemption and exemption issues noted above. If the Court were to grant summary judgment on any of the bases explained above, the landscape of this litigation would be drastically altered. A grant of summary judgment on these bases could entirely extinguish some or all of the claims raised in Plaintiffs' Complaint, result in the dismissal of some of the named Plaintiffs, or narrow the scope of the putative class for which Plaintiffs currently seek discovery. Given the potential for this result, it makes no sense to allow Plaintiffs to conduct time consuming and expensive class-related discovery at this juncture. Thus, Defendants respectfully request this Court to entertain early dispositive motions on these issues and to enter an order tailoring early discovery to those facts related to these issues.

Respectfully submitted,

OAKHURST DAIRY AND
DAIRY FARMERS OF AMERICA, INC.,
By their attorneys,

/s/ Danielle Y. Vanderzanden
Danielle Y. Vanderzanden, #9757
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
One Boston Place, Suite 3220
Boston, MA  02108
Telephone:  617.994.5700
Fax:  617.994.5701
dani.vanderzanden@ogletreedeakins.com

and

Patrick F. Hulla *(pro hac vice)*
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, MO  64111
Telephone:  816.471.1301
Facsimile:  816.471.1303
pat.hulla@ogletreedeakins.com

September 3, 2014

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on September 3, 2014.

/s/ Danielle Y. Vanderzanden
Danielle Y. Vanderzanden

18806769.1