## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| CHRISTOPHER O'CONNOR, | ) | |
| KEVIN O'CONNOR, | ) | |
| JAMES ADAM COX, | ) | |
| MICHAEL FRASER, and | ) | |
| ROBERT McNALLY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Docket No. 2:14-cv-00192-NT |
| | ) | |
| OAKHURST DAIRY and DAIRY | ) | |
| FARMERS OF AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON CONDITIONAL CERTIFICATION

Before the Court is the Plaintiffs' motion for conditional certification of a collective action pursuant to 29 U.S.C. § 216(b) (ECF No. 26). For the reasons stated below, the motion is **GRANTED**.

## BACKGROUND

The Plaintiffs are current and former Maine-based drivers for Oakhurst Dairy ("**Oakhurst**"), a wholly owned subsidiary of Dairy Farmers of America, Inc. (together, the "**Defendants**"). Oakhurst bottles milk and produces other dairy products from a facility in Portland, Maine. Second Am. Class and Collective Action Compl. ¶ 42 ("**Second Am. Compl.**") (ECF No. 49). The Plaintiffs allege that Oakhurst designates their job positions as "route salesmen," when in fact they operate as delivery drivers. Second Am. Compl. ¶¶ 48-50. The crux of the Plaintiffs' federal law claim is that Oakhurst failed to compensate them as covered, non-exempt employees

under the Fair Labor Standards Act (the "**FLSA**"). Second Am. Compl. ¶¶ 72-74.[1] Because of this alleged misclassification, the Plaintiffs seek unpaid overtime for hours worked in excess of forty hours per week, as required by 29 U.S.C. § 207. At this juncture, resolving the misclassification question is premature. Instead, I must determine whether to conditionally certify this action as a collective action under the FLSA.

## DISCUSSION

### I. FLSA Conditional Certification

#### A. Legal Standard

Under the FLSA, subject to certain exceptions, employers must pay their employees overtime wages for work in excess of 40 hours per week "at a rate not less than one and one-half times [their] regular rate." 29 U.S.C. § 207(a)(1); *see* 29 U.S.C. § 213(a)(1). Employees may sue to recover such wages owed either individually or collectively with "other employees similarly situated." 29 U.S.C. § 216(b). Courts in the First Circuit use a two-stage process to determine whether a proposed group of plaintiffs is "similarly situated" and therefore qualified to proceed as a collective action. *Prescott v. Prudential Ins. Co.*, 729 F.Supp.2d 357, 364 (D. Me. 2010).

First, a court determines whether notice should be given to potential collective action members. *See Johnson v. VCG Holding Corp.*, 802 F.Supp.2d 227, 233-34 (D.

---

[1]       The Plaintiffs also bring claims under the Maine Minimum Wage and Overtime Law, 26 M.R.S. § 664, and the Maine Employment Practices Act, 26 M.R.S. §§ 621-A, 626, 626-A. Second Am. Compl. ¶¶ 78-90. This Order is limited to conditional certification of a collective action under the FLSA. Certification of a Rule 23 class action for the Plaintiffs' state law claims is not presently before me.

Me. 2011). This stage typically takes place early in the litigation, before substantial discovery, based on the pleadings and any affidavits. *Id.* at 234. It is the plaintiff's obligation to "make 'a modest factual showing' that she and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan." *Prescott*, 729 F.Supp.2d at 364 (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). If the plaintiff makes this showing, notice may go out to other similarly situated employees, inviting them to join the collective action. *Id.*

Later, following the completion of discovery, an employer may move to decertify the collective action. *Id.* At this second stage, "the court must then 'make a factual determination as to whether there are similarly-situated employees who have opted in.'" *Id.* (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 n.2 (5th Cir. 2008)). "Factors relevant to the stage-two determination include: 'factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" *Id.* (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009)).

### B.    Application

The Plaintiffs seek conditional certification of the following FLSA collective: "[a]ll persons who are employed or have been employed by Defendant Oakhurst as delivery drivers based in the State of Maine at any time since three years prior to the filing of the Complaint, May 5, 2014." Pls.' Mot. for Conditional Certification 2 (ECF No. 26). The Defendants object on the grounds that: (1) the Plaintiffs' declarations establish that they did not share similar job duties and pay provisions; (2) the alleged

3

misclassification is not a "policy" or "practice" sufficient to support conditional certification; and (3) their defenses based on FLSA exemptions will require fact-intensive, individualized inquiries. Defs.' Resp. in Opp'n to Pls.' Mot. for Conditional Certification 4-10 ("**Defs.' Opp'n**") (ECF No. 52). I address each of these points in evaluating whether employees in the proposed collective are "similarly situated" under 29 U.S.C. § 216(b).

The Plaintiffs have submitted eight declarations from current and former Oakhurst employees who were based in and worked out of Maine.[2] These employees, five named plaintiffs and three additional "opt-ins," delivered Oakhurst products to customers. More specifically, their job duties included driving delivery trucks to stops on their routes, unloading product at each stop, giving invoices to customers, collecting payment from customers, making estimates for customers' future orders, entering new orders on handheld devices, driving delivery trucks back to base locations, and recording undelivered inventory on handheld devices. Cox Decl. ¶ 7; Fraser Decl. ¶ 7; Lavway Decl. ¶ 8; McNally Decl. ¶ 7; C. O'Connor Decl. ¶ 8; K. O'Connor Decl. ¶ 7; Scipione Decl. ¶ 7; Sudduth Decl. ¶ 7.

Each employee-declarant explains that he was paid a set salary for work performed during the regular five-day work week. Cox Decl. ¶ 12; Fraser Decl. ¶ 11;

---

[2]     Sept. 17, 2014 Decl. of James Adam Cox ("**Cox Decl.**") (ECF No. 26-3); Sept. 16, 2014 Decl. of Michael Fraser ("**Fraser Decl.**") (ECF No. 26-4); Sept. 17, 2014 Decl. of Jeremy Lavway ("**Lavway Decl.**") (ECF No. 26-5); Sept. 17, 2014 Decl. of Robert McNally ("**McNally Decl.**") (ECF No. 31); Sept. 17, 2014 Decl. of Christopher O'Connor ("**C. O'Connor Decl.**") (ECF No. 26-7); Sept. 17, 2014 Decl. of Kevin O'Connor ("**K. O'Connor Decl.**") (ECF No. 26-8); Sept. 17, 2014 Decl. of Stephen Scipione ("**Scipione Decl.**") (ECF No. 26-9); Sept. 17, 2014 Decl. of Michael Sudduth ("**Sudduth Decl.**") (ECF No. 26-10).

Lavway Decl. ¶ 12; McNally Decl. ¶ 12; C. O'Connor Decl. ¶ 12; K. O'Connor Decl. ¶ 12; Scipione Decl. ¶ 11; Sudduth Decl.¶ 11. When such employees worked a sixth day in a given week, Oakhurst paid them an additional lump sum, calculated based on a percentage of their weekly salary plus, for some employees, a set bonus amount. Cox Decl. ¶ 12; Fraser Decl. ¶ 12; Lavway Decl. ¶ 13; McNally Decl. ¶ 12; C. O'Connor Decl. ¶ 13; K. O'Connor Decl. ¶ 13; Scipione Decl. ¶ 12. The Plaintiffs contend that this practice violated the FLSA because they regularly worked more than forty hours per week, yet were not paid one and one-half times their regular rates of pay for all hours worked over forty in a given week. Second Am. Compl. ¶¶ 71-77.

The Defendants point out that there are variations in the employees' job duties and manner of "sixth-day" payments. For example, depending on the type of truck they drove, some employees collected payment from customers and made estimates for restocking, while others did not. *See, e.g.* Fraser Decl. ¶ 7 ("As a Class B driver I accepted payment from customers but not as a Class A driver."). Further, some employees made deliveries solely within Maine, while others made deliveries across state lines. *Compare* McNally Decl. ¶ 5, *with* Cox Decl. ¶ 5. The Plaintiffs' burden at this stage is to demonstrate that members of the proposed collective have similar jobs, not identical ones. None of the differences the Defendants point out are significant enough to thwart the Plaintiffs' demonstration of job similarity. The same is true for the differences the Defendants note with respect to manner of sixth-day payments. While the employees describe them differently, at bottom, they are all lump sum

payments unrelated to overtime hours worked. That showing is sufficient to meet the modest conditional certification standard.

Next, the Defendants argue that misclassification is not the type of common unlawful plan or policy that itself supports conditional certification. Defs.' Opp'n 7-8 (citing *Colson v. Avnet, Inc.*, 687 F.Supp.2d 914 (D. Ariz. 2010); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493 (D.N.J. 2000)). But the Plaintiffs here have not argued that misclassification alone is what links the employees in the proposed collective. *Cf. Colson*, 687 F.Supp.2d at 928-29 (declining to certify a nationwide collective of exempt employees based on a vague declaration of similarity from one member of the proposed class); *Morisky*, 111 F.Supp.2d at 499 (declining to certify "a group of individuals with different jobs and different job responsibilities who believe they have been improperly classified as exempt and denied overtime wages."). Instead, the Plaintiffs have demonstrated that members of the proposed collective are similar with respect to their positions, job duties, and pay structures. Such a showing is sufficient for conditional certification. *See Curtis v. Scholarship Storage, Inc.*, No. 2:14-cv-303, 2015 WL 1241365, at *4 (D. Me. Mar. 18, 2015) (granting conditional certification to shuttle drivers allegedly misclassified as independent contractors, subject to the same unlawful payroll deductions); *Venegas v. Global Aircraft Serv., Inc.*, No. 2:14-cv-249, 2015 U.S. Dist. LEXIS 24517, at *9 (D. Me. Feb. 5, 2015) (conditionally certifying class of aircraft restoration workers allegedly denied overtime due to misclassification); *Scovil v. FedEx Ground Package Sys., Inc.*, 811

F.Supp.2d 516, 517-18 (D. Me. 2011) (conditionally certifying a class of full-time, single route truck drivers allegedly misclassified as independent contractors).

In addition, the Defendants assert that they properly classified the Plaintiffs as exempt from FLSA's overtime requirements under the Motor Carrier Act exemption, 29 U.S.C. § 213(b)(1), and the "outside sales" exemption, 29 U.S.C. § 213(a)(1). The Defendants maintain that the individualized fact investigation these defenses require makes conditional certification inappropriate in this case. I disagree. After discovery, the Defendants will have the opportunity to re-raise these defenses through a motion to decertify the collective action. But at this first stage, these defenses do not defeat conditional certification. *See Garcia v. Freedom Mortgage Corp.*, No. 09-2668, 2009 WL 3754070, at *5 (D.N.J. Nov. 2, 2009) ("[T]he outside sales and administrative exemptions lend themselves to efficient resolution during discovery and stage two certification."); *Albanil v. Coast 2 Coast, Inc.*, No. H-08-486, 2008 WL 4937565, at *7 (S.D. Tex. Nov. 17, 2008) ("Defendants' assertion of the Motor Carrier Act exemption does not overcome plaintiffs' establishment of a 'similarly situated' group of employees and a common pay policy applicable to all of them . . . Thus, defendants' assertion of an exemption, alone, is an insufficient basis for denying conditional certification and notice.").

At this point, the Plaintiffs have made the modest showing necessary for conditional certification. Later, if discovery does turn up significant differences among opt-in plaintiffs, the Defendants will have the opportunity to file a motion to decertify the collective.

## II.      Appointing Class Representatives and Class Counsel

The Plaintiffs ask that I appoint the five named Plaintiffs as class representatives and Johnson, Webbert and Young, LLP as lead class counsel. As I recently observed in *Curtis*, 2015 WL 1241365, at *5, these requests are properly addressed in the Rule 23 class certification context, where unnamed class members are bound by the outcome of the litigation. Here, with an opt-in collective action, only individuals who affirmatively chose to join the litigation will be bound by its outcome. The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context.[3] I decline to appoint class representatives or class counsel.

## III.     Notice and Consent Form

### A.      Producing Employee Information

The Plaintiffs request that their counsel be provided with the names, addresses, e-mail addresses, and telephone numbers of all potential collective action members within fourteen days of this Order. I will grant this request. The Plaintiffs must safeguard the current and former employees' information and shall not use it for any purpose other than to effectuate notice.

---

[3]      The Plaintiffs point out that the assistance of class representatives is "just as useful in a collective action" as in a class action, and further, that the Plaintiffs "seek to represent the putative class under Rule 23 for purposes of their state law claims." Pls.' Mot. for Conditional Certification 2 n.2. Given the different due process concerns in class and collective actions, and without further argument or citation to case law from the Plaintiffs, I will make these appointment determinations when resolving any future Rule 23 motion for class certification.

## B.      Posting Notice and Consent Form

The Plaintiffs request that I order the Defendants to post the proposed notice and consent form within seven days of this Order at the Defendants' four base locations in Maine (Portland, Waterville, Bangor, and Presque Isle), in a conspicuous place frequented by the employees who make deliveries for the Defendants. The Defendants have not opposed this request and I will grant it.

The Plaintiffs also request permission to post the notice and consent forms online "with links and identifying information." Pls.' Mot. for Conditional Certification 3. The Defendants have not opposed this request. The Plaintiffs are permitted to post the notice and consent forms on the Johnson, Webbert & Young website.

## C.      Content of Notice and Consent Form

The Plaintiffs have provided a proposed notice and consent form to be mailed to potential collective action members. *See* Notice and Consent Form (ECF No. 26-1). The Defendants object to the notice and seek leave to meet and confer with Plaintiffs' counsel regarding its contents, and if needed, file a written response outlining its deficiencies. Defs.' Opp'n 2 n.4, 10. The proposed notice is modeled after the notice I recently approved in *Curtis*, 2015 WL 1241365, at *6, and that Judge Woodcock approved in *Saunders v. Getchell Agency*, No. 1:13-cv-244, 2014 WL 580153 (D. Me. Feb. 12, 2014). The issues the Defendants have previewed do not make the proposed notice deficient.[4] Given that the statute of limitations continues to run against

---

[4]      The Defendants maintain that the proposed notice "conflicts with many applicable principles of notice." Defs.' Opp'n 10 n.20. They provide, as examples, that the notice: (1) "invit[es] communication

potential collective action members until they affirmatively opt-into this suit, I am not inclined to delay notice further, particularly when the Defendants had the opportunity to make their arguments with respect to the proposed notice in their opposition to conditional certification. The Plaintiffs are authorized to send the proposed notice and consent forms to potential collective action members.[5]

## IV.   Request for Defendants to Refrain from Improper Activities

The Plaintiffs ask for an order that the Defendants "refrain from engaging in communications or activities that may improperly influence, mislead or discourage putative plaintiffs from joining this action." Pls.' Mot. for Conditional Certification 3. The Plaintiffs have not pointed to any specific misconduct by the Defendants related to discouraging potential collective action members from joining this lawsuit. The Plaintiffs' proposed notice instructs potential collective action members that "the law absolutely prohibits retaliation against an individual for participating in a lawsuit of

---

with Plaintiff's counsel the [sic] beyond the written communications authorized by the Court" and (2) "fail[s] to mention that putative plaintiffs may acquire more information about the matter by contacting Defendants' counsel." On the record before me, I see no issue with the notice as drafted, which states: "[i]f you have any questions regarding this lawsuit, you may contact the attorneys at Johnson, Webbert & Young listed above." Notice and Consent 2; *see Iriarte v. Redwood Deli and Catering, Inc.*, No. cv-07-5062, 2008 WL 2622929, at *4 (E.D.N.Y. June 30, 2008) (approving notice directing recipients to contact Plaintiffs' counsel for further information); *Hallissey v. Am. Online, Inc.*, No. 99-civ-3785, 2008 WL 465112, at *3 (S.D.N.Y. Feb. 19, 2008) (finding that inclusion of plaintiffs' counsel's contact information for recipients' questions about the lawsuit did not amount to improper solicitation); *Perry v. Nat'l City Mortg., Inc.*, No. 05-cv-891, 2007 WL 1810472, at *4 (S.D. Ill. June 21, 2007) (permitting notice to direct recipients to plaintiffs' counsel for further information and noting that "[i]t would not make sense for a potential putative class member to seek information from Defendant's counsel."). *But see Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 633 (D. Colo. 2002) (approving notice providing contact information for both plaintiffs' and defendants' counsel for further information). The inclusion of Defendants' counsels' contact information here, where such counsel has no part in distributing or collecting consent forms, could confuse notice recipients. *See Wass v. NPC Int'l, Inc.*, No. 09-2254, 2011 WL 1118774, at *11 (D. Kan. Mar. 28, 2011).

[5]      As proposed in the Plaintiffs' reply brief, Plaintiffs' counsel is directed to change the word "approved" to "authorized" in paragraph 5 of the proposed notice. *See* Pls.' Reply in Supp. of Mot. for Conditional Certification 7 n.11 (ECF No. 53).

this type." Notice and Consent Form 1 (emphasis omitted). At this time, I find the language in the proposed notice sufficient.[6]

## CONCLUSION

For the reasons stated above, I **GRANT** the Plaintiffs' motion for conditional certification of the following FLSA collective: all persons who are employed or have been employed by defendant Oakhurst as delivery drivers based in the State of Maine at any time since three years prior to the filing of the Complaint, May 5, 2014; **ORDER** the Defendants to provide employee information, as described above, within fourteen days of this Order; **AUTHORIZE** the Plaintiffs to circulate the Notice and Consent Form to all potential collective action members; **AUTHORIZE** the Plaintiffs to post the Notice and Consent Form on the Johnson, Webbert & Young website;[7] and **AUTHORIZE** the Defendants to post the Notice and Consent Form at their four Maine base locations.

SO ORDERED.

/s/ Nancy Torresen

---

[6]     The Plaintiffs also cite *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014), for the proposition that courts may toll the statute of limitations on collective action members' claims upon the filing of a motion for conditional certification. *See* Pls.' Mot. for Conditional Certification 2 n.1. In *Jackson*, the Plaintiffs moved for conditional certification shortly after filing their complaint and the court issued its order seven months later. The court noted that its own delay increased the risk that potential plaintiffs' claims would be time-barred. *Jackson*, 298 F.R.D. at 170. Here, the parties chose to attempt mediation before fully briefing conditional certification. *See* Report of Hr'g and Order re: Scheduling (ECF No. 43). This motion for conditional certification has been decided within two months of its being fully briefed. There may be a time when tolling is appropriate because plaintiffs have diligently pursued conditional certification and any delay is court-induced. But the facts of this case do not present that situation. I decline to toll the statute of limitations.

[7]     The Plaintiffs will modify the Notice and Consent Form, as discussed above, before such mailing and posting.

11

United States Chief District Judge

Dated this 22nd day of May, 2015.