UNITED STATES DICTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTOPHER O'CONNOR, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Docket No. 2:14-00192-NT |
| | ) |
| OAKHURST DAIRY, et al. | ) |
| | ) |
| Defendants. | ) |

**ORDER ON FINAL SETTLEMENT APPROVAL AND
ATTORNEYS' FEES AND EXPENSES**

Before me are a request for final approval of the settlement of all claims in this suit, (ECF No. 215), and a motion for attorneys' fees and costs (ECF No. 214). For the reasons stated below, I will approve the settlement and grant the motion for attorneys' fees.

**BACKGROUND**

This case concerns claims by Oakhurst Dairy ("**Oakhurst**") Route Sales Drivers who pursued their claims for unpaid wages, other damages, costs, and attorneys' fees, on their own behalf and on behalf of other Route Sales Drivers assigned to an Oakhurst location in Maine between May 5, 2008 and August 29, 2012.[1] In May 2014, the Plaintiffs filed suit against Oakhurst and Dairy Farmers of America, Inc. Summary judgment was granted for the Defendants on the

---

[1] The delivery drivers made claims under various provisions of Maine wage and hour law. 26 M.R.S.A. § 664(3) (overtime wages); 26 M.R.S. § 621-A (timely and full payment of wages); *id*. § 626 (payment of wages after cessation of employment); *id*. § 626-A (penalties provisions).

Plaintiffs' state law claims based on the statutory interpretation of a Maine law exemption to overtime. That judgment was reversed on appeal, and the parties conducted substantial discovery including depositions of all five Named Plaintiffs. The Plaintiffs filed a motion for class certification, and the Defendants filed a motion to decline supplemental jurisdiction. The parties mediated the Plaintiffs' claims and separately participated in a judicial settlement conference, and they agreed to settle their dispute in advance of trial. In March 2018, I authorized the Plaintiffs to circulate notices of the proposed settlement to potential class members. Order Authorizing Notice to Class and Establishing Schedule for Further Action (ECF No. 212).[2]

After conducting a fairness hearing on June 13, 2018, as Federal Rule of Civil Procedure 23(e) requires, I conclude that: (1) the settlement is fair, reasonable, and adequate; (2) that the attorney fees and expenses requested by Class Counsel are reasonable; and (3) the service awards to the five Named Plaintiffs are warranted and reasonable.

## DISCUSSION

I. Settlement

    A.    **Legal Standard**

        1.    **Rule 23**

---

[2] This Order incorporates by reference the definitions in the Settlement Agreement and Release, *see* ECF No. 206-1, and all terms defined therein shall have the same meaning in this Order as set forth in the Settlement Agreement and Release.

Federal Rule of Civil Procedure 23(e) requires the following for approval of a class action settlement:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e). The following factors are relevant for determining whether a settlement is "fair, reasonable, and adequate" under Rule 23(e)(2):

(1) comparison of the proposed settlement with the likely result of litigation;
(2) stage of the litigation and the amount of discovery completed;
(3) reaction of the class to the settlement;
(4) quality of counsel;
(5) conduct of negotiations;
(6) prospects of the case, including risk, complexity, expense and duration.

*Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-cv-515-DBH, 2014 WL 1057079, at *2 (D. Me. Mar. 14, 2014).

### B. Application

#### 1. Rule 23

Regarding the Rule 23(e) requirements: (1) notice has been directed to Settlement Class Members who would be bound by the settlement; (2) a fairness hearing was held; (3) the parties have filed their settlement agreement and have

3

confirmed that there are no additional agreements made in connection with the settlements; (4) there have been no previous class certifications under Rule 23(b)(3); and (5) no objectors have appeared.

Regarding the *Scovil* factors, I take the following into account in my determination of whether the settlement is "fair, reasonable, and adequate" as required by Fed. R. Civ. P. 23(e)(2).

### a. Comparison of Proposed Settlement with Likely Result of Litigation

The total amount of the settlement in this case is $5,000,000 (although the Defendants have agreed to pay the employer share of wage-related taxes for payments made to Settlement Class Members under the Settlement Agreement). According to the Plaintiffs' damages expert, the $5,000,000 settlement represents more than 90% of the $5,452,686.93 in total alleged overtime damages for the 122 Settlement Class Members. ECF No. 218-1. If the settlement is approved, the Settlement Class Members will receive, on average, more than $26,000 each; more than 20 will receive greater than $50,000 each; and none will receive less than $100. ECF No. 218-1.

The settlement amount takes into account potential weaknesses in the Plaintiffs' case including the Defendants' pending motion to decline supplemental jurisdiction, the Defendants' federal preemption defenses and other remaining defenses to liability, objections to the Plaintiffs' method for calculating the amount of overtime damages, and the legal availability of liquidated damages. I find that the settlement fairly and reasonably compensates employees for their lost wages given

4

the challenges the class members would have faced were they to continue litigating their claims. This factor favors approval.

### b. Stage of the Litigation and Amount of Discovery Completed

The parties agreed to settle this case well more than four years after the Plaintiffs filed suit. The settlement was reached after both sides undertook substantial discovery including the Defendants' depositions of all five Named Plaintiffs; the Defendants' production of comprehensive pay and time data for all class members; the Plaintiffs' designation of their damages expert and production of his detailed damage calculations; responses by the named and additional Plaintiffs to the Defendants' interrogatories and documents requests; and supplemental affidavits by the five Named Plaintiffs. This factor favors approval.

### c. Class Reaction

On March 30, 2018, the Settlement Administrator sent notice of the proposed settlement to the 122 class members. No objections have been filed, and no class member has opted out of the settlement. No objections were voiced by any class member at the Final Fairness Hearing.[3]

### d. Quality of Counsel

---

[3] Three notices were returned as undeliverable, and search results indicated that these three class members may be deceased. Efforts to locate their next of kin were unsuccessful. Supp. Decl. of Jake Hack (ECF No. 117-1).

5

Class Counsel's represented the Class Members interests zealously and achieved an excellent result for the class. They have devoted 2600 hours and over $900,000 in hourly fees to this suit. This factor favors settlement approval.

### e. Conduct of Negotiations

The record confirms vigorous and lengthy settlement negotiations. In February 2015, the parties engaged in all-day settlement conference with an experienced mediator. More than 30 months later, the parties resumed settlement efforts at a judicial settlement conference on November 21, 2017, and those arms-length negotiations continued until December 8, 2017, when a tentative settlement was finally reached. This factor favors settlement approval.

### f. Prospects of the Case

This case involved substantial risk to the Plaintiffs. The Plaintiffs' case was initially dismissed and was only reinstated following a lengthy appeal. Other substantial risks remained. To prevail on their overtime claims, the Plaintiffs would have had to succeed on their pending motion for class certification, as well as overcome the Defendants' pending motion to decline supplemental jurisdiction and the Defendants' other liability defenses including claims of federal preemption and defenses based on Maine's overtime exemptions. There was a very real possibility that the Plaintiffs might have recovered nothing in this case.

Had they not settled, the Plaintiffs would have faced more expense and delay. At the time the case settled, the litigation already had spanned more than four years. Considering time for trial, potential post-trial motions, and appeals, the litigation

could have continued for two or three more years had a settlement not been reached.

I find that the settlement accounts for the risks and likely costs associated with continued litigation. This factor weighs in favor of approval.

### 2. Service and Incentive Payments

Class Counsel has proposed, and the Defendants do not object to, service payments to the five Named Plaintiffs in the following amounts: Chris O'Connor ($15,000); James Adam Cox ($12,000); Robert McNally ($10,000); Kevin O'Connor ($6,500); and Michael Fraser ($6,500). Class Counsel recommends these amounts because all Named Plaintiffs played a significant role in motivating settlement, including agreeing to be a Named Plaintiff with the attendant time demands and risk of public criticism, responding under oath to the Defendants' written discovery requests, providing multiple affidavits under oath in support of the Plaintiffs' claims, meeting and staying in contact with Class Counsel multiple times over several years, and submitting to an in-person deposition. Varying amounts for the Named Plaintiffs account for differences in duties undertaken. Plaintiff Chris O'Connor travelled from his residence in North Carolina to Boston to attend the February 2015 mediation and travelled from North Carolina to Maine three times to assist Class Counsel, including to attend a deposition of another Named Plaintiff before his own deposition and to attend the judicial settlement conference in November 2017. Plaintiff James Adam Cox took unpaid time off from work for three full days, including to attend the judicial settlement conference. Robert McNally devoted two full days to the case, including to attend the judicial settlement

conference. Decl. of David G. Webbert ¶ 11 (ECF No. 214-1). I find these proposed service awards are appropriate in light of the time the Named Plaintiffs devoted to the case and the significant role they played in motivating settlement.

**II.     Attorneys' Fees**

Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The First Circuit recognizes two general methods for awarding attorneys' fees in class actions: (1) the "percentage of fund" ("**POF**") method; and (2) the "lodestar" method. Plaintiffs' counsel requests that I use the percentage of fund method to award the attorneys' fees in this case, citing our precedents using the POF method. The First Circuit has approved of the POF method as the prevailing approach used in common fund cases. *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).

The Plaintiffs' counsel has requested one third of the $5,000,000 settlement amount in attorneys' fees or $1,666,666.67, and $50,000 in expenses. Plaintiffs' counsel has represented that the legal services agreements with the five class representatives and three other plaintiffs provided for a contingent fee of one-third of the recovery plus reimbursement of all case expenses. Webbert Decl. ¶ 2.

A one-third contingent fee is common in class action wage-and-hour cases. *Scovil*, 2014 WL 1057079, at *5, 2014 U.S. Dist. LEXIS 33361 at *20-22; see also *Curtis v. Scholarship Storage Inc.,* No. 2:14-cv-303-NT, 2016 U.S. Dist. LEXIS 70410, at *10-11 (D. Me. May 31, 2016).

8

This hard-fought class action, filed more than four years ago, has proven to be complex and risky. Class Counsel engaged in extensive briefing of hotly disputed legal issues and thorough discovery, as well as an all-day mediation in Boston and a judicial settlement conference and related settlement negotiations. Webbert Decl. ¶¶ 3-5. Class counsel filed a motion for summary judgment; responded to cross-motions for partial summary judgment; successfully appealed summary judgment in the Defendants' favor regarding the Plaintiffs' state law claims; moved for Rule 23 class certification; and opposed the Defendants' motion to decline supplemental jurisdiction. ECF Nos. 24, 25, 26, 27, 29, 35, 52, 53, 54, 94, 97, 100, 102, 104, 105, 112, 114, 123, 138, 142, 158, 159, 160, 163, 164, 170, 173, 176, 182, 188. In addition, Class Counsel (1) propounded interrogatories and document requests to the Defendants and a detailed notice of subject matters for 30(b)(6) deposition of the Defendants, (2) pursued the Defendants' objections to the Plaintiffs' discovery requests, (3) prepared written discovery responses for the Named and opt-in Plaintiffs; and (4) prepared for, and defended, depositions of all five Named Plaintiffs. Webbert Decl. ¶ 5.

The fee petition indicates that Class Counsel's lodestar is over $960,000. ECF No. 214. Plaintiffs' counsel performed this work on a contingent fee basis, assuming the risk that there would be no recovery and therefore no compensation. I find that Class Counsel's request for attorneys' fees and costs is reasonable.

As provided in the Settlement Agreement, the court-approved award of attorneys' fees and expenses shall be paid out of the Global Settlement Fund. I assume continuing jurisdiction over it.

## III. Class Action Fairness Act

Under the Class Action Fairness Act ("CAFA"), no later than 10 days after a proposed settlement of a class action is filed in court, the defendant is required to serve notice of the proposed settlement with the appropriate federal and state officials. *See* 28 U.S.C. § 1715(b). A court may not finally approve a settlement until 90 days after the delivery of such notice. *See* 28 U.S.C. § 1715(d).

Defense counsel have advised that the appropriate state and federal officials have been notified. Def.s' Notice of Service of CAFA Notifications to Federal and State Officials (ECF No. 207). None of those state and federal officials have filed an objection to the proposed settlement. Final approval is now appropriate because more than 90 days have passed since defense counsel sent the appropriate documents to the federal and state officials. *See* 28 U.S.C. § 1715(d).

## IV. Final Approval of Settlement Class

I previously granted (ECF No. 212) the parties' request for preliminary certification of the following Rule 23 Settlement Class for the sole, and limited, purpose of implementing the terms of the Settlement Agreement, subject to my final approval:

> All current and former Route Sales Drivers assigned to an Oakhurst location in Maine who performed compensable work as employees of Oakhurst Dairy between May 5, 2008 and August 29, 2012 and received from Oakhurst Dairy at least one non-zero dollar check for compensable work during that time period.

An action can be settled as a class action that binds absent class members only if it is first certified as a class action under Rule 23. *See* Fed. R. Civ. P. 23.

Certification of an action requires that it meet the requirements of Rule 23(a) and one of the types of class actions described in Rule 23(b) for settlement purposes. *Michaud*, 2015 WL 1206490 at *2. This action satisfies the requirements of Rule 23 such that it may be certified for settlement purposes.

Rule 23(a) requires the following: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

The "numerosity" requirement does not mandate any strict numerical cutoff for class certification. *Michaud*, 2015 WL 1206490 at *2. Furthermore, "impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Id.* (internal punctuation and citations omitted). Courts in the First Circuit "have generally found that a class of 40 or more individuals satisfies the numerosity requirement." *Id*. This requirement may be loosened "where a class contains employees suing their present employer . . . because class members may be unwilling to sue their employer out of fear of retaliation." *Id.* (internal punctuation and citation omitted). This case thus easily satisfies the numerosity requirement, as there are 122 Settlement Class Members, some of whom remain employed by Oakhurst. *Id*.

The "commonality" element requires the Settlement Class Members' claims "must depend upon a common contention" and one "that is capable of classwide

11

resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 3 (quoting *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011)). Named Plaintiffs' common claim that the Defendants failed to pay overtime wages for each hour worked over 40 in a week is central to all Settlement Class Members' claims. Plaintiffs have satisfied the commonality requirement.

The "typicality" requirement "is satisfied when the representative plaintiff's injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *Michaud*, 2015 WL 1206490 at *3. Named Plaintiffs, like the other class members, claim to have been injured by not receiving wages, including overtime wages, they were owed. The interests of the Named Plaintiffs align with the members of the class they seek to represent. The five Named Plaintiffs have established typicality with respect to the class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent," and "factors in competency and conflicts of class counsel." *Amchem Prods., Inc.*, 521 U.S. at 625, 626 n.20. There are three factors to consider when determining whether this requirement has been met. First, plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litigation. Second, the representative plaintiff cannot have interests antagonistic to the class. Third, the

representative party and the representative attorney must be expected to prosecute the action vigorously.

The Plaintiffs are represented by attorneys Jeffrey Neil Young, David Webbert and Carol Garvan and the firm of Johnson, Webbert & Young, LLP. Class Counsel advise that attorney Young has practiced labor and employment law for over 30 years; attorney Webbert has been specializing in prosecuting complex civil rights cases for over 30 years; attorney Garvan has been specializing in prosecuting complex employment and civil rights cases for over 7 years and has been named as a "Rising Star" by New England Super Lawyers for the past three years. Decl of Jeffrey Neil Young (ECF No. 26-2); Third Decl. of Jeffrey Neil Young (ECF No. 164-10); Aff. Resume of Webbert (ECF No. 165-1); Amended Aff. Of Carol Garvan (ECF No. 167); Amended Aff. of Webbert (ECF No. 168); Decl. of Donald F. Fontaine (ECF No. 214-5); Decl. of Chad Hansen (ECF No. 214-6). Attorneys Young, Webbert, and Garvan have represented plaintiffs in many of class and collective action lawsuits. *Id*.

Class representatives cannot have interests that are antagonistic, or in conflict, with the interests of the class they are seeking to protect. *Amchem*, 521 U.S. at 625, 626 n.20. "Here, the interests of the named plaintiffs align with the members of the class they seek to represent" in the settlement class. *Michaud*, 2015 WL 1206490 at *3.

Regarding vigorous prosecution of the case, Class Counsel have significant experience handling labor, employment, and civil rights actions and are qualified to handle this case. All five Named Plaintiffs have taken an active role in the

prosecution of this action; in particular, all five were deposed in person and submitted sworn affidavits in support of the claims of the Class. None of the class representatives settled his claims without settling the claims of all of the members of the class. Extensive written discovery was exchanged, including interrogatories and document production requests by both parties, in addition to the disclosures. There appears to have been a willingness of the class representatives to take an active role in the litigation and to protect the interests of the absentees. The adequacy requirement is therefore met for the class.

Rule 23(b)(3) requires that questions or facts common to class members predominate over questions only affecting individual class members. Fed. R. Civ. P. 23(b)(3). Moreover, a class action must be superior to other available methods for fairly, and efficiently, adjudicating the controversy, considering: (1) the class members' interests in individually controlling the prosecution of separate actions; (2) the extent of any litigation concerning the controversy already begun by class members; and (3) the desirability of concentrating the litigation in the forum.[4] *Id*. Common questions predominate here because all claims arise from the same practice of treating class members as if they were not eligible for overtime. *See Michaud*, 2015 WL 1206490 at *4. Although damage awards could have varied due to, among other things, the amount of overtime worked, individualized damages determinations are

---

[4] For purposes of the certification of a settlement class, because there are no trial management issues to consider, the Court need not consider the Rule 23(b)(3)(D) factor of the likely difficulties in managing a class action. *Curtis v. Scholarship Storage*, No. 2:14-cv-303-NT, 2016 U.S. Dist. LEXIS 9001 at * 8 n.1 (D. Me. January 25, 2016) (citation omitted).

not predominance-defeating, particularly when they can be resolved with payroll records. *Id*. The superiority requirement is met because the class action will resolve all claims in a single proceeding in a forum already familiar with the facts and theories of the case, there are no pending individual suits, and there is no indication in the record that class members are interested in bringing separate actions. *Id*. at 5.

## CONCLUSION

For the reasons stated above, I **APPROVE** final settlement of all claims in this matter and the plan of distribution, including the service award to the five Named Plaintiffs. I also **GRANT** the motion for attorneys' fees and costs (ECF Nos. 214 and 215).

I further **GRANT** the parties' motion to certify this Action as a class action for settlement purposes only and because the Action has been certified as a class action under Federal Rule of Civil Procedure 23, all Settlement Class Members who did not actively opt-out of the case (and the Settlement thereof) shall be bound by the

15

dismissal with prejudice on the merits, and by the release of claims described in the Settlement Agreement.

I further **DENY** as moot any pending motions not resolved in this order.

I further **ORDER** that the parties shall report to me on the distribution and any settlement funds remaining for cy pres distribution on, or before, October 15, 2018.

The case is **DISMISSED** with prejudice on the merits; provided, however, that, without affecting the finality of this Judgment and Order of Dismissal with Prejudice, I hereby retain exclusive and continuing jurisdiction for purposes of supervising, administering, implementing, interpreting, and enforcing this Judgment and Order of Dismissal with Prejudice, as well as the Settlement Agreement, including administration and distribution of payment thereunder.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 19th day of June, 2018.